United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Gregory O'Neil Henderson,<br>Petitioner<br><br>v.<br><br>Secretary, Department<br>Of Children and Families, *et al.*,<br>Respondents. | )<br>)<br>)<br>)<br>) Civil Action No. 23-21294-Scola<br>)<br> |

### Order

Before the Court is *pro se* Petitioner Gregory O'Neil Henderson's petition under 28 U.S.C. § 2254 (ECF No. 1).[1] The petition raises sixteen grounds for relief which challenge the constitutionality of his involuntary commitment as a "sexually violent predator" at the Florida Civil Commitment Center ("FCCC"). (*See id.* at 1–2). The Respondent filed a response (ECF No. 14) and two appendices (ECF Nos. 15, 16) with accompanying exhibits (ECF No. 15-1–15-4) and transcripts (ECF No. 16-1–16-4). The Petitioner filed a reply (ECF No. 22). The Court has carefully reviewed the parties' written submissions, the record, and applicable law. For the reasons explained below, Grounds 13 through 16 of the Petition are dismissed and the rest of the Petition is denied on the merits.

### 1. Background

Between November 22, 1989, and January 12, 1990, the State charged the Petitioner with six counts of sexual battery on a person less than twelve years of age. (*See* Informations, ECF No. 15-1 at 24–34). Pursuant to a plea agreement with the State, the Petitioner entered a plea of no contest to three counts of familial sexual battery, a lesser-included offense, in exchange for a

---

[1] Although the Petitioner claims that he is bringing his Petition under 28 U.S.C. § 2241, challenges to the constitutionality of an involuntary civil commitment occurring *after* the petitioner served a criminal sentence should be brought pursuant 28 U.S.C. § 2254. *See Kakuk v. Dep't of Child. & Fam.*, 516 F. App'x 901, 902 & n.1 (11th Cir. 2013); *Garcia v. Abbate*, 2024 WL 517987, at *1 n.1 (S.D. Fla. Feb. 9, 2024) (Ruiz, J.).

fifteen-year sentence followed by five years of probation. (*See* J. & Sentences, ECF No. 15-1 at 36–52). After the Petitioner violated the terms of his probation, the state trial court revoked his probation on February 14, 1997, and imposed a new sentence of thirty years. (*See* VOP J. & Sentences, ECF No. 15-1 at 53–76). The Petitioner was then placed on "conditional release" on November 9, 2004, but that release was revoked effective May 18, 2005, after probation officers discovered pornographic material in the Petitioner's home. (*See* Revocation of Conditional Release Order, ECF No. 15-1 at 79).

On September 5, 2013, a team of psychologists retained by the Florida Department of Children and Families ("DCF") determined that the Petitioner met the "criteria to be considered a sexually violent predator" and recommended that the State "file a petition seeking Mr. Henderson's involuntary civil commitment" under Florida's "Jimmy Ryce Act." (DCF Recommendation, ECF No. 15-1 at 83); *see generally* Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act, Fla. Stat. §§ 394.910–.932.

On May 1, 2018, after holding a commitment hearing, the state trial court found that the Petitioner was a "sexually violent predator within the meaning of the Act" and ordered him to be involuntarily committed to the custody of DCF. (Order of Commitment, ECF No. 15-1 at 162–63). On appeal, the Third District Court of Appeal (the "Third DCA") affirmed the Petitioner's involuntary commitment in an unelaborated per curiam decision. *See Henderson v. State*, 280 So. 3d 486 (Fla. 3d DCA 2019).

On December 9, 2019,[2] the Petitioner filed a twenty-six-claim petition for writ of habeas corpus under Rule 4.460 of the Florida Rules of Civil Procedure for Involuntary Commitment of Sexually Violent Predators. (*See generally* Habeas Pet., ECF No. 15-1 at 217–68). On June 4, 2020, the State filed a

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

Response opposing relief. (*See generally* Resp. to Habeas Pet., ECF No. 15-2 at 1–18). The state postconviction court denied relief on November 20, 2020. (*See* Order Denying Habeas Pet., ECF No. 15-3 at 21–31). The Petitioner appealed, and the Third DCA affirmed in an unelaborated per curiam decision. *See Henderson v. State*, 338 So. 3d 881 (Fla. 3d DCA 2022). The Third DCA's mandate issued on May 18, 2022. (*See* May 18, 2022 Mandate, ECF No. 15-3 at 174).

The Petitioner filed the instant petition on March 30, 2023. (*See* Pet. at 20).

## 2. Legal Standard

### A. Deference Under § 2254

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007). AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks omitted). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

According to AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 409–10. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of [the state court's] decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim qualifies as an adjudication on the merits that is entitled to deference under AEDPA. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

### B. Exhaustion under § 2254

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation

marks omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quotation marks and other omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Johnson v. Fla.*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("[A] state-court prisoner must present his claim to the state court in a manner that would allow a reasonable reader to understand the legal and factual foundation for each claim." (quotation marks omitted)). "In Florida, exhaustion usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (alteration in original).

To fairly present the federal nature of the claim, "[i]t is not sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1343–44 (11th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Rather, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Picard*, 404 U.S. at 276 (citations omitted). The Eleventh Circuit further has observed that proper exhaustion "requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (quotation marks omitted).

### C. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal

proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (citation omitted). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88; *Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

### 3. Timeliness and Exhaustion

The Respondent argues that Ground 15 is untimely and that Grounds 8, 13, 14, 15, and 16 are unexhausted. (*See* Resp. at 15–16 28–30, 40–41, 43–44, 46–48). The Respondent concedes that all other grounds raised in the Petition are timely and properly exhausted. (*See generally* Resp.).

The Court agrees with the Respondent that Grounds 13, 14, 15, and 16 must be dismissed because they are unexhausted and procedurally defaulted under the "independent and adequate state procedural ground" doctrine. However, the Court finds that Ground 8 has been exhausted and should be reviewed on the merits. The Court will not address the Respondent's timeliness argument for Ground 15 since it must be dismissed as unexhausted in any event.

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court 'when (1) a state court has declined to address those claims because the prisoner failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). The Petitioner admits that Grounds 13, 14, 15, and 16 of his Petition are identical to Issues 22, 24, 25, and 26 of his state-court habeas petition. (*Compare* Pet. at 15–19, *with* Habeas Pet., ECF No. 15-1, at 256–58, 260–67). The state postconviction court denied all four of these "issues" for the same reason: "any such error should have been raised on direct appeal." (Order Denying Habeas Pet., [ECF No. 15-3] at 29–30). Since the Third

DCA affirmed the lower court in an unelaborated *per curiam* decision, *see Henderson*, 338 So. 3d at 881, the Court must assume that it adopted the state postconviction court's reasoning that these claims were barred under state law, *see Wilson*, 138 S. Ct. at 1192.

Habeas corpus proceedings initiated by involuntarily committed sexually violent predators are governed by Rule 3.850 of the Florida Rules of Criminal Procedure. *See* Fla. R. Civ. P. S.V.P. 4.440(a)(2); *see also Williams v. State*, 126 So. 3d 264, 265 (Fla. 3d DCA 2010). Rule 3.850 "does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.850(c). In other words, "issues that could have been, but were not raised on direct appeal are not cognizable" under Rule 3.850 and "are procedurally barred from review[.]" *Harvey v. Dugger*, 656 So. 2d 1253, 1256 (Fla. 1995). The state postconviction court found that Issues 22, 24, 25, and 26 were procedurally barred from being considered under state law because they could have been raised on direct appeal but were not. (*See* Order Denying Habeas Pet., [ECF No. 15-3] at 29–30).[3]

The Eleventh Circuit has held if a state court denies a claim for failing to comply with the procedural requirements of Rule 3.850 then it "rest[s] on an independent and adequate state ground that precludes federal habeas consideration of [that] issue." *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 & n.25 (11th Cir. 2005); *see also, e.g.*, *Hodges v. Sec'y, Dep't of Corr.*, 2007 WL 604982, at *32 (M.D. Fla. Feb. 22, 2007) (finding that an issue which "should have been objected to at trial and raised on direct appeal" was procedurally defaulted under § 2254). Since the Petitioner cannot file a second direct appeal in state court, it is now impossible for him to exhaust Grounds 13, 14, 15, and 16. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Since the substance of Grounds 13 through 16 were dismissed as procedurally

---

[3] The Petitioner raised only one issue on direct appeal: that the "final judgment of civil commitment [was] not supported by competent substantial evidence." (Initial Br., [ECF No. 15-1] at 176).

barred under state law, they are unexhausted and procedurally defaulted on federal habeas review.

Procedurally defaulted claims can still be reviewed under § 2254 if the petitioner can show either "cause and prejudice to excuse the default" or "that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004). "But, for either exception to apply, the petitioner bears the burden of proof." *Burgos v. Dixon*, 2022 WL 17093216, at *11 (S.D. Fla. Nov. 21, 2022) (Altman, J.) (first citing *Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993); and then citing *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006)). Since the Petitioner does not argue that the "cause and prejudice" exception applies, the Court will not address it further. (*See generally* Pet.; Reply).

Instead, the Petitioner makes conclusory assertions that he is "innocent," which the Court takes to mean that the Petitioner does not meet the definition of a "sexually violent predator" under Florida law. (*See* Reply at 4). A petitioner's blanket insistence that he is innocent is not good enough. He must support his actual innocence claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Although the Petitioner relies on the putative testimony of several witnesses as "proof" of his innocence, he admits that he knew about these witnesses (and their allegedly helpful testimony) before his commitment hearing took place. (*See* Reply at 4–5, 9). Many federal courts have held "evidence that was available at trial but simply not presented" cannot be considered "new" under *Schlup*. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1018 n.21 (11th Cir. 2012). Moreover, even if this testimony could be considered "new evidence," the Court finds—for reasons that will be discussed below—that it fails to meet the "actual innocence" standard since it would not have changed the outcome of the commitment hearing. *See id.* at 1011. For these reasons, the Court finds that the "actual innocence" exception does not

apply, and that the Petitioner cannot excuse the procedural default against Grounds 13, 14, 15, and 16.

On the other hand, the Court finds that Ground 8 has been exhausted. Unlike Grounds 13, 14, 15, and 16, Ground 8 argues that counsel performed ineffectively during the Petitioner's commitment hearing. (*See* Pet. at 11–12). Unlike claims of trial court error or challenges to the constitutionality of a statute, ineffective-assistance claims must generally "be raised on collateral review pursuant to Florida Rule of Criminal Procedure 3.850." *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016). Although the state postconviction court found that the Petitioner's "substantive claims of prosecutorial misconduct" were procedurally barred under state law, it did not find that an ineffective-assistance claim based on that alleged misconduct was also barred. (Order Denying Habeas Pet., [ECF No. 15-3] at 26). Since Ground 8 was reviewed on the merits by the state's highest court, it has been exhausted. *See O'Sullivan*, 526 U.S. at 845.

**4. Discussion**

**A. Grounds 1 through 7**

Grounds 1 through 7 of the Petition allege that counsel should have called several different witnesses during his commitment hearing: T.D., one of the victims from the original 1989 sexual battery offenses (Ground 1); four probation officers and "nine other witnesses"[4] (Grounds 2 and 7); Dr. Jeffrey Musgrove, Dr. Karen T.J. Nammer, Dr. Terrence Campbell and Dr. Joseph Sesta, four psychologists who examined the Petitioner (Grounds 3, 4 and 6); and Sergeant Jorge Lorenzo and Officer Rufus Boclaire, two police officers who arrested the Petitioner on May 17, 2005 (Ground 5). (*See* Pet. at 5–11). The state postconviction court concluded that counsel "investigated all witnesses

---

[4] The Petitioner never says who these "nine other witnesses" are or what they would have testified about. (*See* Pet. at 6–7). Since the Petitioner fails to allege who these witnesses are or how they would have been useful to his defense, he failed to state a claim as to these "nine other witnesses." *See Estiven v. Sec'y, Dep't of Corr.*, 2017 WL 6606915, at *4 (11th Cir. Sept. 28, 2017) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)).

thoroughly and concluded they would only damage [the Petitioner's] case if called to testify." (Order Denying Habeas Pet., [ECF No. 15-3] at 25). The Court agrees with the state postconviction court's reasonable application of federal law and the facts.

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). Strategic decisions are entitled to a "strong presumption" of correctness, and so the Petitioner bears the burden of showing that "no competent counsel" would have refused to call the witnesses he named. *Chandler*, 218 F.3d at 1314–15. In addition, the Petitioner must also show that the testimony of these witnesses was sufficiently exculpatory such that there was a "reasonable probability" the outcome of the commitment hearing would have been different if they were called. *See Fortenberry v. Haley*, 297 F.3d 1213, 1227 (11th Cir. 2002) (citing *Strickland*, 466 U.S. at 694).

First, the Petitioner says that T.D. would have admitted that her "mother told her to say Petitioner molested her" when she was four years old and that she would have recanted her accusations against the Petitioner at the commitment hearing. (*See* Pet. at 5–6). This argument is meritless and borderline fanciful. There is no evidence that T.D. would have recanted her testimony from when she was four-years-old and any argument to the contrary is rank speculation. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985). In addition, counsel did reach out to T.D. and her family and concluded that they "were not receptive." (Aug. 29, 2017 Letter from Counsel, ECF No. 15-2 at 24). Counsel was not ineffective for failing to call a victim who was not willing to testify on the Petitioner's behalf and would have most likely given damaging testimony at the hearing. *See, e.g., Cardona v. Dixon*, __ F. Supp. 3d ___, 2023 WL 4202633, at *14 (S.D. Fla. June 27, 2023) (Altman, J.) (holding that counsel was not ineffective for failing to call a witness who told the defendant's investigator to "[L]eave me alone. Leave my family alone").

Second, the Petitioner claims that four different probation officers would have testified about the circumstances of a "verification check" where pornography was found in the Petitioner's bedroom. (*See* Pet. at 6–7, 11). The state postconviction court reasonably concluded that this testimony would have been "irrelevant." (*See* Order Denying Habeas Pet., [ECF No. 15-3] at 25). Counsel considered calling these witnesses but wisely concluded that the pornography incident was essentially a red herring. As counsel explained to the Petitioner:

> I again implore you to look at the bigger picture. If you are civilly committed it won't be because the jury believed you had pornography, it will be because they believe you molested 3 little girls, that you are a pedophile and that you are likely to do it again. Whether or not you had pornography under your bed and who it belonged to is NOT the main issue, in fact it is barely an issue at all.

(Oct. 2, 2015 Letter from Counsel, [ECF No. 15-2] at 33).

Counsel's assessment was undoubtedly correct since the trial court cited the Petitioner's pedophilia—not the fact he once had pornographic material under his bed—as the reason he should be committed as a sexually violent predator. (*See* Vol. 2 May 1, 2018 Tr., ECF No. 16-4 at 46–48). In his Reply, the Petitioner argues that the pornography found under his bed was mistakenly described as "child porn," so it must have had an adverse impact on him during the commitment hearing. (*See* Reply at 2). This argument is unpersuasive since the order revoking the Petitioner's conditional release specifically describes the pornography as an "adult video tape"—not child pornography. (*See* Revocation of Conditional Release Order, ECF No. 15-1 at 79). Counsel was not ineffective for failing to call these irrelevant witnesses. *See Densmore v. United States*, 543 F. Supp. 2d 1359, 1365 (S.D. Ga. 2008).

Third, the Petitioner alleges that counsel should have called Drs. Musgrove, Namer, Campbell, and Sesta to explain the "different and conflicting results in the evaluations" they gave. (Pet. at 7–8, 10). The state postconviction court reasonably concluded that the testimony of these psychologists would have been damaging to the Petitioner's case, not favorable. Although Dr.

Musgrove and Dr. Namer's reports were not identical, both still concluded that the Petitioner met the criteria to be committed as a sexually violent predator.[5] (*See* Dr. Musgrove Report, ECF No. 15-1 at 87–110; Dr. Namer Report, ECF No. 15-1 at 119–29). Dr. Sesta was potentially an even more damaging witness since he "changed his opinion" to the Petitioner's detriment after concluding that the Petitioner was malingering during the examination. (*See* Jan. 9, 2018 Letter from Counsel, [ECF No. 15-2] at 27). Finally, Dr. Campbell died before the commitment hearing took place so counsel cannot be blamed for failing to call an unavailable witness. *See Cardona*, 2023 WL 4202633, at *13.

Counsel recounted all of this to the Petitioner in three separate letters, indicating that she investigated all four psychologists and reasonably concluded that they would not be helpful to the Petitioner's case. (*See* Aug. 29, 2017 Letter from Counsel, ECF No. 15-2 at 23–24; Jan. 8, 2018 Letter from Counsel, ECF No. 15-2 at 26–27; Aug. 27, 2015 Letter from Counsel, ECF No. 15-2 at 29–30). Since the testimony of these psychologists would have been "aggravating" and harmful to the Petitioner's case, counsel reasonably decided not to call them as witnesses. *See Thomas v. United States*, 596 F. App'x 808, 811 (11th Cir. 2015).

Fourth, the Petitioner argues that counsel should have called Sergeant Lorenzo and Officer Boclaire to discuss the Petitioner's arrest after pornography was found in his residence. (*See* Pet. at 9–10). As the Court discussed above, testimony about this event was irrelevant to the state court's determination that the Petitioner was a sexually violent predator. Counsel also deposed both officers but concluded that neither of them would be useful since they no longer remembered the events surrounding the Petitioner's arrest. (*See* Boclaire Depo. Tr., ECF No. 15-2 at 39; Lorenzo Depo. Tr., ECF No. 15-2 at 48–49).

Since all of the witnesses the Petitioner names were thoroughly investigated by counsel and would have given either irrelevant or harmful

---

[5] The State called Dr. Namer as a witness at the commitment hearing, so, in any event, defense counsel had an opportunity to cross-examine her. (*See* Vol. May 1, 2018 Tr., ECF No. 16-3 at 133–96).

testimony, the state postconviction court reasonably applied *Strickland* in concluding that counsel was not ineffective. The Court denies Grounds 1 through 7.

### B. Ground 8

In Ground 8, the Petitioner argues that counsel was ineffective "for failing to object to [an] improper comment by the prosecution." (Pet. at 11). During the Petitioner's commitment hearing, the prosecutor "improperly informed [the judge] that Petitioner was charged and convicted of four counts of sexual battery" even though he had only been convicted of three counts of sexual battery. (*Id.* at 11–12). This argument is meritless. The prosecutor corrected herself and confirmed that the Petitioner had only been convicted of three counts of sexual battery. (*See* Vol. 2 May 1, 2018 Tr., ECF No. 16-4 at 25, 34–35). In any event, the prosecutor's brief misstatement had no effect on the outcome of the case since the Petitioner had been convicted of sexually battering multiple young girls under the age of six—whether he was convicted of three or four counts was immaterial to the state court's commitment decision. *See United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). Ground 8 is denied.

### C. Ground 9

The Petitioner alleges in Ground 9 that counsel interfered with his right to testify when she (incorrectly) informed him that "should he testify it would give the prosecutor an opportunity to bring up his criminal past." (Pet. at 12). Since "the prosecutor brought up Petitioner's criminal history anyway," the Petitioner says that he would have testified at his commitment hearing had counsel not misled him. (*Id.*). The state court reasonably concluded that this claim was "refuted by the record." (Order Denying Habeas Pet., [ECF No. 15-3] at 27). The Petitioner was present throughout the commitment hearing and saw firsthand that the prosecutor was actively referencing his criminal history. Nevertheless, even after his criminal history had been discussed in front of him, the Petitioner engaged in a sworn colloquy with the trial court where he

confirmed that he knew he had the right to testify, that he could testify even if his attorney advised him not to, and that he was still waiving his right to testify. (*See* Vol. 2 May 1, 2018 Tr., ECF No. 16-4 at 21–23). By engaging in this colloquy, the Petitioner eliminated "the basis for a claim that [he] was denied the right to testify[.]" *United States v. Anderson*, 1 F.4th 1244, 1258 (11th Cir. 2021). Ground 9 is denied.

### D. Ground 10

In Ground 10, the Petitioner claims that counsel was ineffective for failing to introduce psychological evaluations conducted by Dr. Campbell and Dr. Sesta. (*See* Pet. at 13). The state postconviction court found that counsel could not have done this since the evaluations were inadmissible under Florida law. (Order Denying Habeas Pet., [ECF No. 15-3] at 27). This was a reasonable decision. The trial court refused to admit Dr. Campbell's report because he had died before the commitment hearing and the reliability of his report had not previously been established. (*See* Vol. 1 May 1, 2018 Tr., ECF No. 16-3 at 139–41); *see also DeLisle v. Crane Co.*, 258 So. 3d 1219, 1229 (Fla. 2018) (explaining that expert testimony must be deemed reliable before it can be admitted into evidence). And, as the Court explained above, Dr. Sesta's conclusion changed, so admitting Dr. Sesta's first report would have meant the State would have responded by showing that Dr. Sesta had changed his opinion to the Petitioner's detriment.

The Petitioner responds that it was counsel herself that caused these issues when she "purposely waited until the witnesses was [sic] either dead or changed their mines [sic] before she decided to set a trial date[.]" (Pet. at 13). This is a purely speculative argument, but, even if it was not, counsel could not have reasonably predicted that Dr. Campbell would die and that Dr. Sesta would change his opinion before the Petitioner's commitment hearing took place. *See Richter*, 562 U.S. at 110 ("[A]n attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."). Ground 10 is denied.

### E. Ground 11

In Ground 11, the Petitioner argues that counsel was ineffective for failing to file a motion to dismiss the civil commitment petition. (*See* Pet. at 13–14). This argument is refuted by the record. Counsel adopted the Petitioner's *pro se* motion to dismiss the civil commitment petition. (*See* Mot. to Dismiss, ECF No. 15-4 at 310–35; Resp. to Mot. to Dismiss, ECF No. 15-4 at 337). The state court denied the motion to dismiss as meritless. (*See* Order Denying Mot. to Dismiss, ECF No. 15-4 at 345). Undeterred, defense counsel also moved for a directed verdict during the commitment hearing, (*see* Vol. 2 May 1, 2018 Tr., ECF No. 16-4 at 16–24), and then again argued on appeal that there was insufficient evidence to involuntarily commit the Petitioner, (*see* Initial Br., ECF No. 15-1 at 176–80). Counsel dutifully attempted to challenge the State's civil commitment proceedings. Her lack of success was not due to her deficient performance but rather because of the State's overwhelming evidence that the Petitioner's pedophilia makes him a sexually violent predator. *See Stephens v. Sec'y, Fla. Dep't of Corr.*, 678 F.3d 1219, 1227 (11th Cir. 2012) (rejecting claim that counsel was ineffective for failing "to more vigorously argue" for a judgment of acquittal where there was "overwhelming evidence of guilt"). Ground 11 is denied.

### F. Ground 12

In his final ground for relief, Ground 12, the Petitioner alleges that the Jimmy Ryce Act is unconstitutional as applied to him. The Petitioner argues that, at the time he was convicted for sexual battery, the Jimmy Ryce Act "was not in effect." (Pet. at 15). In short, the Petitioner is claiming that his detention violates the Constitution's prohibition on *ex post facto* laws since the Jimmy Ryce Act retroactively "increase[d] the punishment for [his] criminal acts" in a way that could not have reasonably anticipated when the Petitioner was convicted. *Collins v. Youngblood*, 497 U.S. 31, 43 (1990). The state postconviction court denied this claim based on the Florida Supreme Court's decision in *Westerheide v. State*, 831 So. 2d 93 (Fla. 2002), which held that the

Jimmy Ryce Act neither violated the constitutional ban on *ex post facto* laws nor violated a civil committee's due process rights. (Order Denying Habeas Pet., [ECF No. 15-3] at 29 (citing *Westerheide*, 831 So. 2d at 103–04)).

Both the state postconviction court and the Florida Supreme Court in *Westerheide* reasonably applied federal law in concluding the Jimmy Ryce Act is not an *ex post facto* law. As the Supreme Court explained in upholding the constitutionality of a nearly identical Kansas law, involuntary commitment statutes are not *ex post facto* laws since they are not punitive in nature and do not "have a retroactive effect" since they are "based on a determination that person currently . . . suffers" from a mental disorder that poses a danger to the public. *Kansas v. Hendricks*, 521 U.S. 346, 370–71 (1997); *see also Westerheide*, 831 So. at 99–100 (adopting the Supreme Court's *ex post facto* analysis in *Hendricks*); *Vega v. Poppell*, 2019 WL 12021768, at *11 (S.D. Fla. Nov. 26, 2019) (Altonaga, J.) (affirming constitutionality of Jimmy Ryce Act). In sum, the Petitioner's constitutional rights were not violated when he was involuntarily committed based (at least in part) on convictions that occurred prior to the enactment of the Jimmy Ryce Act. Ground 12 is denied.

**5. Evidentiary Hearing**

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, the record refutes the Petitioner's grounds for relief, meaning the Court can "adequately assess [the Petitioner's] claim without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). The Petitioner, therefore, is not entitled to an evidentiary hearing.

### 6. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court rejects a petitioner's constitutional claims on procedural grounds, the petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). If the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists "would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484.

The Petitioner fails to make such a showing for the claims that were denied on procedural grounds and for the claims denied on the merits., hence the Court declines to issue a certificate of appealability.

### 7. Conclusion

For the foregoing reasons, the Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1) is **dismissed in part** and **denied in part**. A certificate of appealability is also **denied**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, **the Petitioner is not entitled to appeal *in forma pauperis***. The Clerk is directed to **deny** any and all pending motions as moot and **close** this case.

**Done and ordered**, in chambers, in Miami, Florida, on February 28, 2024.

_____
Robert N. Scola, Jr.
United States District Judge

*Copies, via U.S. Mail, to*
Gregory O'Neil Henderson
991530
Florida Civil Commitment Center (FCCC)
13619 SE Highway 70
Arcadia, Florida 34266
PRO SE